**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RICHARD D. HURLES,
*Petitioner-Appellant*,

v.

CHARLES L. RYAN\*,
*Respondent-Appellee*.

No. 08-99032

D.C. No.
2:00-cv-0118-RCB

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Arizona
Robert C. Broomfield, Senior District Judge, Presiding

Argued and Submitted
October 7, 2010—Pasadena, California

Filed May 16, 2014

Before: Harry Pregerson, Dorothy W. Nelson,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge D.W. Nelson;
Dissent by Judge Ikuta

---

\* Charles L. Ryan is substituted for his predecessor, Dora B. Schriro, as Director for the Arizona Department of Corrections. Fed. R. App. P. 43(c)(2).

## SUMMARY[**]

### Habeas Corpus/Death Penalty

The panel withdrew its opinion filed January 18, 2013; filed a new opinion affirming in part and denying in part the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a capital murder conviction and death sentence; denied the warden's motion for ruling on her February 1, 2013, petition for rehearing en banc; allowed the parties to file a petition for rehearing and rehearing en banc with respect to the new opinion; and granted in part and denied in part the petitioner's motion to remand.

The petitioner, an Arizona state prisoner, moved to remand for reconsideration of procedural default in light of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). The panel granted the motion as to appellate counsel's failure to challenge the trial court's denial of neurological testing, but otherwise denied the motion.

The panel held that the state court reasonably denied the petitioner's claims that sentencing counsel failed to explain how the petitioner's mental illness and deficiencies affected his conduct at the time of the crime, depriving him of the effective assistance of counsel.

The panel held that the state court reasonably denied the petitioner's claim that appellate counsel was ineffective by

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not challenging the trial court's failure to weigh mitigating evidence cumulatively.

The panel held that the state court came to an unreasonable determination of the facts in denying the petitioner's claim that the trial judge's failure to recuse herself denied the petitioner due process of law. The panel remanded for an evidentiary hearing on the claim of judicial bias.

Dissenting, Judge Ikuta wrote that the majority offers a new way to evade AEDPA deference: make an unsupported – and unsupportable – assertion that the state court's fact finding process is "unreasonable" for purposes of 28 U.S.C. § 2254(d)(2).

---

## COUNSEL

Denise I. Young and Michael Aaron Harwin, Tucson, Arizona, for Petitioner-Appellant.

Terry Goddard, Attorney General, Kent E. Cattani and J.D. Nielsen, Office of the Arizona Attorney General, Capital Litigation Section, Phoenix, Arizona, for Respondent-Appellee.

---

**ORDER**

The opinion filed January 18, 2013, and appearing at 706 F.3d 1021, is withdrawn, *Carver v. Lehman*, 558 F.3d 869, 878–79 (9th Cir. 2009), and is replaced by the opinion filed concurrently with this order. Our prior opinion may not be cited as precedent to any court. The parties may file a petition for rehearing and rehearing en banc with respect to the opinion filed together with this order.

**IT IS SO ORDERED.**

**OPINION**

D.W. NELSON, Senior Circuit Judge:

Petitioner Richard D. Hurles appeals the district court's denial of his federal habeas petition challenging his conviction for capital murder and the imposition of his death sentence. Hurles argues that the district court erred in denying his claims of judicial bias and ineffective assistance of sentencing and appellate counsel, and in finding various claims procedurally defaulted. We remand for an evidentiary hearing on Hurles's claim of judicial bias. We also grant in part Hurles's motion for a remand pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and remand for consideration of appellate counsel's failure to challenge the trial court's denial of neurological testing. We otherwise affirm the district court and deny Hurles's motion.

## I. Background

Hurles, on parole after serving nearly fifteen years for prior crimes, went to the library in Buckeye, Arizona on a November afternoon in 1992. *State v. Hurles*, 914 P.2d 1291, 1293 (1996) (en banc). He attacked librarian Kay Blanton by attempting to rape her and then stabbing her thirty-seven times. *Id.* Hurles left the library, cleaned himself up, discarded his bloody clothes and fled on a bus to Las Vegas, Nevada. *Id.* at 1294. The state charged Hurles with burglary, first-degree murder, first-degree felony murder and attempted sexual assault. *Id.* at 1293.

The court appointed an attorney to represent Hurles, an indigent. That attorney moved for the appointment of co-counsel when the State decided to seek the death penalty. Defense counsel cited numerous reasons necessitating co-counsel, among them, the many witnesses, the State's intention to utilize forensic experts, the need to maintain a productive client relationship and the dense and detailed preparation necessary for both phases of trial. The trial court summarily denied the motion.

Defense counsel brought a petition for special action in the Arizona Court of Appeals. The petition challenged the denial of the motion to appoint co-counsel as violating Hurles's rights to due process, equal protection and the adequate assistance of counsel. The real party in interest, the State of Arizona, declined to respond to the petition because it lacked standing to do so. *Hurles v. Superior Court*, 849 P.2d 1, 2 (Ariz. Ct. App. 1993). However, the petition named the trial judge, Ruth Hilliard, as the respondent, as required by Arizona law. Ariz. R. P. Special Actions 2(a). This nominal designation "is a mere formality," and the trial judge

"has no interest in the litigation and should have no interest in the way the case is decided." *State ex rel. Dean v. City Court*, 598 P.2d 1008, 1000–11 (Ariz. Ct. App. 1979). Nonetheless, Judge Hilliard filed a responsive pleading, months before the presentation of any evidence in the case against Hurles, that defended her ruling below.

In her response, Judge Hilliard described the murder as "brutal." She noted that defense counsel had not noticed any defenses, had not disclosed the names of trial witnesses, had not requested an examination of Hurles and that it was not known whether Hurles would present a mental health expert at trial. Judge Hilliard nevertheless described the state's case against Hurles as "very simple and straightforward, compared to other capital cases" and predicted that it would not involve an inordinate amount of witness testimony. She argued that the denial of second counsel was rationally related to the state's duty to preserve its resources, noting that Hurles had failed to show that his case was "any more complex or difficult to prepare than almost any other criminal case." Judge Hilliard referenced the rules of professional conduct and stated that if defense counsel believed that she could not render competent representation, she was bound to withdraw and, quite possibly, to withdraw her name from the list of attorneys who contracted with the county to serve as appointed counsel. Judge Hilliard concluded, "Clearly there are other attorneys who provide contract services for Maricopa County who would be able to provide competent representation in a case as simple as this."

The Arizona Court of Appeals published a decision denying Judge Hilliard standing to appear in the special action and ruling it improper for judges to file pleadings in special actions solely to advocate the correctness of an

individual ruling in a single case. *Hurles*, 849 P.2d at 3–5. The court noted that the presiding criminal judge, not Judge Hilliard, requested the filing of a responsive pleading and that there was no contact between Judge Hilliard and the Arizona Attorney General's office as the pleading was prepared. *Id.* at 2, n.2. However, Colleen French, of the Arizona Attorney General's Office, represented Judge Hilliard in the special action proceeding and later admitted to having had some communication with Judge Hilliard about this matter. In opposing a motion to disqualify the Arizona Attorney General's Office from representing the state, French referenced her "communications with [Judge Hilliard] during the special action proceedings" but did not describe their nature of content. The record is ambiguous as to the nature and extent of those communications.

Addressing Judge Hilliard's participation in the special action proceeding, the court of appeals held that it was "of the inappropriate 'I-ruled-correctly' sort" *Hurles*, 849 P.2d at 4. The court explained that "at every level of the judiciary, judges are presumed to recognize that they must do the best they can, ruling by ruling, with no personal stake—and surely no *justiciable* stake—in whether they are ultimately affirmed or reversed." *Id.* The court stated that "[t]his principle, which is essential to impartial adjudication, does not change from direct appeal to special action, merely because the judge is a nominal respondent in the latter." *Id.* The court then held that Judge Hilliard lacked standing to file a responsive pleading and declined to consider the pleading filed in her name. *Id.*

Judge Hilliard continued to preside over Hurles's trial. A jury found Hurles guilty of all charges. Judge Hilliard then conducted an aggravation and mitigation hearing to determine

the appropriate sentence for Hurles. Arizona's capital sentencing scheme provided at the time of trial that Judge Hilliard, sitting alone, would determine the presence or absence of the aggravating factors required by state law for the imposition of the death penalty. *Ring v. Arizona*, 536 U.S. 584, 588 (2002). The Supreme Court has since held that capital defendants are entitled to a jury determination of any fact that would support the imposition of a death sentence. *Id.* at 589. At the aggravation and mitigation hearing, Hurles offered substantial mitigating evidence, including his markedly dysfunctional family background, cognitive deficiencies, long-term substance abuse, mental illness, good behavior while incarcerated and an expert opinion that Hurles suffered diminished capacity at the time of the crime.

Following the presentation of penalty phase evidence, Judge Hilliard found one statutory aggravating factor: that Hurles committed the crime in an especially cruel, heinous and depraved manner. She found two nonstatutory mitigating circumstances: that Hurles suffered a deprived childhood in a clearly dysfunctional home and that he behaved well in prison prior to the underlying crime. She concluded that these circumstances did not warrant leniency and condemned Hurles to die. The Arizona Supreme Court affirmed Hurles's conviction and sentence on appeal. *Hurles*, 914 P.2d at 1300.

Hurles filed his first petition for post-conviction review ("PCR") in 1999. Judge Hilliard presided over this PCR. French, the same attorney who represented Judge Hilliard in the prior special action proceeding, represented the state. Judge Hilliard denied the PCR, and the Arizona Supreme Court summarily affirmed.

Hurles commenced federal habeas proceedings in 2000. He then returned to state court to file a second PCR raising additional claims, including one of judicial bias. Hurles moved to recuse Judge Hilliard from presiding over his second PCR. The motion was referred to another judge and denied. Judge Hilliard then denied Hurles's second PCR, and the Arizona Supreme Court summarily affirmed.

Hurles returned to federal court and filed an amended habeas petition, raising ten claims. The district court denied most of them as procedurally barred. After additional briefing, the district court denied the remainder of Hurles's claims on the merits and certified four issues for appeal to this Court.

## II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 2253. We review de novo the district court's denial of Hurles's habeas petition, and we review the district court's findings of fact for clear error. *Brown v. Ornoski*, 503 F.3d 1006, 1010 (9th Cir. 2007). We review for abuse of discretion the determination that a petitioner is not entitled to an evidentiary hearing. *Stanley v. Schriro*, 598 F.3d 612, 617 (9th Cir. 2010). Because Hurles filed his federal habeas petition after 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this case. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

AEDPA places limitations on a federal court's power to grant a state prisoner's federal habeas petition. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). When a state court has adjudicated a claim on the merits, we may grant relief only if the adjudication of that claim "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). To determine the relevant clearly established federal law, we look to the holdings, but not the dicta, of the Supreme Court at the time the state court adjudicated the claim on the merits. *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000). In considering whether the state court unreasonably applied clearly established federal law, we are limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S.Ct. at 1398).

An unreasonable application of federal law results where the "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Panetti v. Quarterman*, 551 U.S. 930, 953 (holding that AEDPA does not require habeas courts to await "some nearly identical factual pattern" before applying a clearly established rule, nor does it prohibit "finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced") (internal quotation marks and citations omitted). We cannot grant relief unless the state court came to a decision that was objectively unreasonable. *Williams*, 529 U.S. at 410.

We cannot find that the state court made an unreasonable determination of the facts in this case simply because we would reverse in similar circumstances if this case came before us on direct appeal. *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). Instead, we must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record" before the state court. *Id.* To find the state court's fact finding process defective in a material way, or, perhaps, completely lacking, "we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Id.*

If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court. *Pinholster*, 131 S.Ct. at 1401.

## III. Discussion

### A. Ineffective Assistance of Counsel

Hurles brought various claims of ineffective assistance of counsel ("IAC") in his federal habeas petition, all of which the district court either dismissed as procedurally defaulted or denied on the merits.

To bring a successful IAC claim, Hurles must show counsel's deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).   "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689).    Hurles bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.   To establish prejudice, Hurles must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'  Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787–88 (quoting *Strickland*, 466 U.S. at 693, 687).

"The standards created by *Strickland* and [AEDPA] are both highly deferential, and when the two apply in tandem, review is doubly so."  *Richter*, 131 S.Ct. at 788 (internal quotation marks and citations omitted).  In considering the state court's denial of Hurles's IAC claims, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785.  We do not ask, in the first instance, whether counsel's performance

fell below *Strickland*'s standard because "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). We must "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under [AEDPA] . . . . The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. We are mindful that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### 1.  Procedurally Defaulted IAC Claims

The warden contends that Hurles procedurally defaulted five of his IAC claims. Hurles moves to remand for reconsideration of procedural default in light of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). We grant the motion as to appellate counsel's failure to challenge the trial court's denial of neurological testing, and we remand on that basis. We otherwise deny Hurles's motion.

The relevant claims include trial counsel's failure to locate a key guilt phase witness and appellate counsel's failure to raise (1) the denial of a request for neurological testing, (2) the consideration of improper victim statements, (3) that, generally, Arizona' death penalty statute fails to narrow the class of death-eligible defendants and (4) that, specifically, Arizona's F(6) statutory aggravating factor fails to narrow the class of death-eligible defendants.

Hurles procedurally defaulted these claims when he failed to raise them before the Arizona Supreme Court. *See Zichko v. Idaho*, 247 F.3d 1015, 1021–22 (9th Cir. 2001) ("A habeas petitioner must present his claims to the highest state court in order to satisfy the exhaustion requirement of [AEDPA]."). "[T]he procedural default rule barring consideration of a federal claim 'applies . . . if it is clear that the state court would hold the claim procedurally barred.'" *Franklin v. Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)). If Hurles presented these IAC claims to the Arizona Supreme Court now, the court would dismiss them as waived. Ariz. R. Crim. P. 32.2 (waiver with narrow exceptions not applicable here). Thus, Hurles's failure to present these claims to the state supreme court "'in a timely fashion has resulted in a procedural default of those claims.'" *Zichko*, 247 F.3d at 1022 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991), *overruled on other grounds by Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012) (holding petitioner "defaulted his federal claims in state court," so, met "technical requirements for exhaustion" because "no state remedies [were] available to him") (internal quotation marks and citations omitted).

For the procedural default rule to apply, "the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief." *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (amended) (internal quotation marks and citations omitted). Arizona's waiver rules are independent and adequate bases for denying relief. *Stewart v. Smith*, 536 U.S. 856, 859–60 (2002) (per curiam) (holding denials pursuant to Arizona waiver rules are independent of federal law); *Ortiz v. Stewart*,

149 F.3d 923, 931–32 (9th Cir. 1998) (finding Arizona waiver rule consistently and regularly applied).

Now that we have found "an independent and adequate state procedural ground, 'federal habeas review is barred unless [Hurles] can demonstrate cause for the procedural default and actual prejudice, or [can] demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.'" *Bennett*, 322 F.3d at 580 (quoting *Noltie v. Peterson*, 9 F.3d 802, 804–05 (9th Cir. 1993)).

In our amended opinion filed on January 18, 2013, we affirmed the district court's holding of procedural default as to these claims. After we filed our amended opinion, however, Hurles moved to remand pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309, an intervening Supreme Court decision. *Martinez* held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial." 132 S.Ct. at 1315. In his motion to remand, Hurles argues that this very circumstance exists here: The ineffectiveness of counsel at his post-conviction proceedings caused Hurles to default substantial claims of ineffective assistance of trial and appellate counsel. Thus, he argues, the *Martinez* exception to procedural default applies, and we should remand for further proceedings as to that issue. We took that motion under submission pending the resolution of *Detrich v. Ryan*, — F.3d —, 2013 WL 4712729, (9th Cir. Sep. 3, 2013) (en banc).

In *Detrich*, the district court held several of the petitioner's claims of ineffective assistance of trial counsel procedurally defaulted because, like Hurles, Detrich failed to raise those claims during his initial state post-conviction

relief proceedings. *Id.* at *1. Sitting en banc, we remanded to the district court pursuant to *Martinez* to determine whether cause existed to excuse post-conviction counsel's procedural default. *Id.* at *9. *Detrich* confirmed that a remand is appropriate where post-conviction counsel's failure to raise a claim of ineffective assistance of trial counsel may have caused the procedural default of that claim. It did not speak, however, to the question here, which is whether remand is appropriate where the defaulted claim alleges the ineffective assistance of appellate counsel.

Nonetheless, we recently decided *Nguyen v. Curry*, — F.3d —, 2013 WL 6246285 (9th Cir. Dec. 4, 2013), which addresses this very question. In *Nguyen*, we held that "*Martinez* applies to the failure to raise not only a claim of trial-counsel IAC, *but also* a claim of appellate-counsel IAC." *Id.* at *1 (emphasis added)." The *Nguyen* Court thus remanded for "the district court to determine in the first instance whether [the petitioner's] procedural default should be excused under *Martinez*." *Id.*

To establish cause for the procedural default of an IAC claim, Hurles must show that post-conviction counsel was ineffective pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), in not raising a particular claim. *Martinez*, 132 S.Ct. at 1318. Specifically, Hurles must demonstrate counsel's performance was deficient and that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Hurles also must show that the underlying IAC claim is "substantial," meaning that it "has some merit." *Martinez*, 132 S.Ct. at 1318. We discuss each claim in turn to consider whether Hurles has established cause to excuse the default of his IAC claims.

First, Hurles claims that trial counsel failed to conduct an adequate guilt phase investigation. Trial counsel never disputed that Hurles caused the victim's death but argued that Hurles was *M'Naughton* insane at the time of the crime. Ariz. Rev. Stat. 13-502(A) (1993) ("A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong."); *see also Clark v. Arizona*, 548 U.S. 735, 748–56 (2006) (upholding as constitutional the 1993 amendments to Arizona's insanity law in effect at the time of Hurles's trial).

To establish this defense, trial counsel presented expert testimony that Hurles was in a psychotic state of mind at the time of the murder due to brain damage, and so did not know what he was doing or that it was wrong. Hurles also alleges, however, that hours before the murder, he had consensual sex with a woman who was not the victim. Trial counsel did not identify, locate or question this woman.

Certainly, we have held that counsel must conduct an adequate investigation to prepare a mental health defense in a capital case. *See, e.g.*, *Bloom v. Calderon*, 132 F.3d 1267, 1277–78 (9th Cir. 1997). Adequate counsel would have tracked down this witness, as she was the last person to have intimate or substantial contact with Hurles close in time to the crime. Conceivably, she could have provided crucial insight into his behavior and mental state just hours before the murder, which would relate to his insanity defense at the guilt phase. This testimony also might have proved helpful at the sentencing phase of trial. *See* Ariz. Rev. Stat. § 13-703 (G)(1) (1991) (listing as a mitigating factor "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to

conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."). Counsel's failure to investigate and locate this witness appears deficient. *See, e.g.*, *Silva v. Woodford*, 279 F.3d 825, 842 (9th Cir. 2002) ("[A]n attorney's failure to investigate, during either the guilt phase or the sentencing phase of a capital trial, can amount to constitutionally deficient performance.").

Though counsel's performance likely proved deficient, Hurles has not established prejudice. To do so, Hurles must show a reasonable probability that but for counsel's failure to track down the witness, the result of the guilt phase would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Federal post-conviction counsel sought and obtained funding for an investigator to locate this witness. There is nothing in the record to suggest that she has been found, and we can only speculate as to the nature of her testimony and whether it would have helped or undermined Hurles's insanity defense. Thus, Hurles's "claim of prejudice amounts to mere speculation," *Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1981), and he has not established cause to excuse the procedural default of this claim.

Additionally, Hurles makes several claims of ineffective assistance of appellate counsel. The first is that appellate counsel failed to challenge the trial court's denial of Hurles's request for neurological testing to support his insanity defense—his only defense at trial. Hurles contends that the denial of funds violated his due process rights pursuant to *Ake v. Oklahoma*, 470 U.S. 68 (1985).

Hurles retained Dr. Marc. S. Walter as an expert at trial. Dr. Walter opined that based on a neuropsychological exam, Hurles suffered from physiological brain damage and recommended a Computer-assisted Topographic Mapping ("CTM") test to substantiate his opinion. The state's expert, psychiatrist Dr. Alexander Don, agreed that to verify brain impairment, Hurles would need to undergo "some objective neurological investigation, like a CTM scan."

Trial counsel requested funds for a CTM examination. The trial court denied this request. At trial, the prosecutor cross-examined Dr. Walter, asking what tests would verify brain damage and whether those tests had been conducted. Dr. Walter testified that the relevant tests that would show brain damage had not been conducted. The state's expert then testified that "there would need to be further studies" to confirm brain damage and that "if [a] practitioner suspects brain injury, then it ought to be able to be demonstrated objectively on testing." After the guilt phase ended but before the sentencing hearing, the trial court approved funds for a brain scan. Dr. Drake Duane conducted the CMT and found an "abnormality in the left frontal region" that is associated with "processing difficulty."

In *Ake*, the Supreme Court held that "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." 470 U.S. at 76. The Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, *at a minimum*, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the

defense." *Id.* at 83. Hurles's sanity was not just a significant factor at trial—it was his entire defense at the guilt phase. This case is not like *Vickers v. Stewart*, where the petitioner sought out-of-state testing that would have taken several weeks where nearly "every . . . expert who provided evidence in the case[] agreed that no amount of testing could establish whether [the petitioner] had in fact suffered a seizure at the time of the offense"—the key to establishing the insanity defense. 144 F.3d 613, 615–16 (9th Cir. 1998). Nor did Hurles seek the appointment of a third psychiatrist as did the petitioner in *Leavitt v. Arave*, 646 F.3d 605, 610 (9th Cir. 2011).

Here, the sole defense at guilt was insanity, and Hurles's expert offered testimony in support of that defense. The state offered a contrary opinion, resulting in a battle of the experts. Both experts agreed that objective testing could show brain damage, but the trial court denied funding for this test until after the guilt phase concluded. The state used the absence of such an objective test to its advantage, tipping the scales of the battle of the experts in its favor.

Appellate counsel's failure to raise this claim on appeal was deficient. Appellate counsel "unreasonably failed to discover nonfrivolous issues" to appeal, and Hurles's *Ake* claim was "clearly stronger than those presented" on appeal. *Smith v. Robbins*, 528 U.S. 259, 285, 288 (2000) (internal quotation marks omitted). Hurles also can show prejudice from this error, as the brain scan conducted after trial showed brain damage. The Supreme Court held in *Martinez* that "[a]llowing a federal habeas court to hear a claim of ineffective assistance of [appellate] counsel when an attorney's errors . . . caused a procedural default in an intial-review collateral proceeding acknowledges, as an equitable

matter, that the initial-review collateral proceeding, if undertaken . . .with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 132 S.Ct. at 1318. We find cause sufficient to excuse the procedural default of Hurles's *Ake* claim and remand.

Hurles also contends that appellate counsel performed inadequately by failing to challenge the trial court's consideration of improper victim impact evidence. The trial court considered the presentence report, which included a statement from the victim's husband that the "death penalty is the only viable option" and that the "death penalty will not change things but the punishment fits the crime." The report also included the homicide detective's opinion that the "death penalty is the appropriate sentence." The victim's family also made live statements before the trial court. The victim's husband stated that "the only sentence that's commensurate with the crime . . . is the death penalty." The victim's daughter acknowledged that the court could not inflict on Hurles "the amount of violence and horrendous way that [her] mom died" but that the court could make sure no other family had to go through what hers had. Hurles argues that this evidence violated his Eighth Amendment rights pursuant to *Booth v. Maryland*, 482 U.S. 496 (1987) and *Payne v. Tennessee*, 501 U.S. 808 (1991).

Hurles has not demonstrated that he was denied the adequate assistance of counsel on appeal. We have held that even where victim impact statements "'serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant,'" that worry falls away when a judge, rather than a jury, sentences a defendant to death. *Rhoades v.*

*Henry*, 638 F.3d 1027, 1055 (9th Cir. 2010) (quoting *Booth*, 482 U.S. at 508); *see also Gulbrandson v. Ryan*, 738 F.3d 967, 996 (9th Cir. 2013) ("[C]ourts must assume that the trial judge properly applied the law and considered only the evidence he knew to be admissible.") (internal quotation marks and citation omitted); *State v. Roscoe*, 910 P.2d 635, 653 (Ariz. 1996) (holding evidence focusing on the impact of a capital crime on the victim's family is relevant).

Finally, we see no reason to remand Hurles's claims that appellate counsel failed to raise constitutional challenges to Arizona's death penalty statute. Hurles argues that the statute generally fails to narrow the class of defendants subject to the death penalty, as does the "especially cruel, heinous or depraved" aggravating factor included in the statute. The district court found these claims unexhausted and procedurally defaulted but addressed them on the merits anyway and denied them in a reasoned decision. Because a court has reviewed Hurles's claims challenging the constitutionality of Arizona's death penalty statute, we deny his motion as to these claims. *Cf. Martinez*, 132 S.Ct. at 1316 (noting that "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims"). We remand for consideration by the district court in the first instance Hurles's claim that appellate counsel failed to raise the *Ake* claim on appeal. The district court should afford Hurles an evidentiary hearing on this issue if one is warranted and shall enter a new judgment on the remanded claim.

### 2.  Sentencing Counsel

Hurles claims that sentencing counsel failed to explain how Hurles's mental illness and deficiencies affected his conduct at the time of the crime, depriving him of the effective assistance of counsel.  The state court reasonably denied this claim.

As discussed, to bring a successful IAC claim, Hurles must show deficiency and prejudice.  *Strickland*, 466 U.S. at 687.

Hurles contends that trial counsel failed to draw a causal nexus between his mental health problems and his conduct at the time of the crime, thus, the mental health evidence presented at sentencing proved worthless.  *State v. Wallace*, 773 P.2d 983 (Ariz. 1989) (en banc) ("A difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control."); *see also State v. Greene*, 967 P.2d 106, 117 (Ariz. 1998) (en banc) ("This court has held that family background may be a substantial mitigating circumstance when it is shown to have some connection with the defendant's offense-related conduct.") (internal quotation marks and citations omitted).

Counsel did not perform deficiently.  First, Supreme Court precedent existing at the time of trial did not require showing a causal nexus between mitigating evidence and the crime.  In fact, the Supreme Court had held that "the sentencer in capital cases must be permitted to consider *any* relevant mitigating factor." *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982) (emphasis added) (explaining  *Lockett v.*

*Ohio*, 438 U.S. 586 (1978) (plurality)); *see also Lockett*, 438 U.S. at 604 ("[T]he Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."). Therefore, counsel did not perform below the objective standard of care when she did not establish a causal nexus between Hurles's mental conditions and the crime.

Moreover, counsel conducted a rather thorough penalty phase investigation and presented voluminous mitigating evidence. She called four witnesses to testify to Hurles's dysfunctional family background, mental and psychological disabilities and good behavior while incarcerated before the underlying crime. She commissioned a detailed social history that catalogued Hurles's maladjusted family circumstances and deprived life, and that contained affidavits from family members and others who knew Hurles. In her briefing before the trial court, defense counsel highlighted Hurles's intoxication at the time of the crime. Trial counsel also adeptly cross-examined the state's psychiatrist.

On this record, we cannot say that counsel's efforts fell short of what the Constitution requires. *Porter v. McCollum*, 130 S.Ct. 447, 453 (2009) (finding counsel's failure to investigate and present mitigating evidence, which did not reflect reasonable professional judgment, deficient and prejudicial); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (finding deficient and prejudicial counsels' failure to examine court file relating to petitioner's prior conviction); *Wiggins*, 539 U.S. at 532, 538 (granting petition where counsel conducted unreasonably insufficient mitigation investigation

that fell short of prevailing professional standards); *see also Wong v. Belmontes*, 130 S.Ct. 383, 385 (2009) (per curiam) (denying IAC claim where counsel "understood the gravity of th[e] aggravating evidence" and "built his mitigation strategy around the overriding need to exclude it). The state court reasonably denied this claim.

### 3. Appellate Counsel

Hurles alleges that appellate counsel denied him the effective assistance of counsel by not challenging the trial court's failure to weigh the mitigating evidence cumulatively. The state court reasonably denied this claim.

A criminal defendant enjoys the right to the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 391–97 (1985). We consider claims of ineffective assistance of appellate counsel according to the standard set forth in *Strickland*, 466 U.S. 668. *Miller v. Keeney*, 882 F.2d 1428, 1433–34 (9th Cir. 1989). Hurles must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal. *Id.* at 1434.

The trial judge found beyond a reasonable doubt that Hurles committed the crime in an especially heinous, cruel and depraved manner, a statutory aggravating factor. As to cruelty, the court found that the victim remained conscious while being stabbed thirty-seven times: she attempted to reach a phone to call for help and responded to paramedics who treated her at the scene. She also suffered fifteen defensive stab wounds struggling to protect herself. The court also found that Hurles inflicted gratuitous violence on

the victim, establishing that he committed the murder in a heinous or depraved manner. In addition to the fifteen defensive wounds, the victim suffered eight stab wounds to her head and neck, twelve to her torso and two to her legs. Of the thirty-seven wounds, three could have been fatal; the victim bled to death. The court concluded that the attack "had to have been mind-numbing and terrifying and excruciatingly painful" for the victim and that Hurles committed the murder in an especially heinous, cruel and depraved manner.

The trial court also considered the evidence in mitigation. The court found that Hurles did not establish statutory factor (G)(1), A.R.S. § 13-703(G)(1), which concerns diminished capacity, or the ability to appreciate the wrongfulness of one's conduct or to conform one's conduct to the requirements of law. While the court found that Hurles is "borderline mentally retarded" and has a learning disorder, he still understood the consequences of his actions and attempted to cover his tracks to evade detection. The trial court accepted evidence that Hurles had been drinking before the crime but found it insufficient to establish incapacity due to intoxication.

The court found that Hurles had proved, by a preponderance of the evidence, two nonstatutory mitigating circumstances:

> Number one, the defendant had a deprived childhood and was raised in a clearly dysfunctional home environment. Defendant's father was abusive to defendant and to his siblings, molested his daughter, had sex with his son's girlfriend. Defendant's

brothers were in trouble with the law frequently throughout defendant's life and may have abused alcohol throughout their lives.

Number two, the defendant had good behavior while incarcerated prior to the commission of this crime. While incarcerated[,] defendant attended available counseling sessions and performed well in his work as a cook in the prison kitchen.

The court then noted that it had considered other factors Hurles had raised in his briefing, including his low intelligence and lack of education, as well as his inadequate mental health treatment while incarcerated. The court did not find those factors mitigating. The trial court concluded that Hurles had not shown that any of the proven mitigating circumstances were sufficiently substantial to warrant leniency and imposed a sentence of death.

Hurles contends that the trial court considered evidence of his mental deficiencies and intoxication for the limited purpose of determining whether he suffered from diminished capacity at the time of the crime. He argues that the trial court failed, in the final analysis, to consider evidence of his mental deficiencies and intoxication cumulatively with the other mitigating evidence. Hurles claims that counsel erred in failing to raise this issue on appeal.

Counsel did not raise any sentencing issues on appeal, which the Arizona Supreme Court noted. *Hurles*, 914 P.2d at 1299. Even so, the state supreme court conducted "a thorough and independent review of the record and of the

aggravating and mitigating evidence to determine whether the sentence [wa]s justified." *Id.* (quoting *State v. Brewer*, 826 P.2d 783, 797 (Ariz. 1992)). The court summarized the trial court's findings regarding the mitigating evidence and stated:

> A difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted a defendant's ability to perceive, to comprehend, or to control his actions. No such evidence was offered, and the trial judge did not err in concluding that Hurles's family background was not sufficiently mitigating to require a life sentence.

> The judge also found that Hurles had good behavior while incarcerated prior to committing the murder. Taken either by itself or in combination with Hurles's family background, we do not believe this sufficiently mitigates the quality of the aggravating circumstance. A life sentence would not be more appropriate.

*Id.* at 1299–1300 (citation omitted).

The state court denied Hurles's claim of ineffective assistance of appellate counsel, which he raised in his first PCR. The court reasoned that Hurles had not met the *Strickland* standard, that the state supreme court independently reviewed the sentence and that the outcome on

appeal would not have been different if Hurles had presented this claim explicitly. First PCR at 3.

We must consider whether this denial of Hurles's claim of ineffective assistance of appellate counsel qualifies as objectively unreasonable. In order for us to grant the petition, Hurles must show that the state court's denial of this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786–87. Hurles has not made such a showing. Even if we presume deficiency, we find prejudice wanting. *Strickland*, 466 U.S. at 697 (holding a court deciding an IAC claim need not address both components of the inquiry if the defendant makes an insufficient showing on one). Hurles has not shown that, but for appellate counsel's failure to raise this claim, the state court would have invalidated his death sentence. *Miller*, 882 F.2d at 1434.

The Constitution requires a sentencer to consider any and all mitigation evidence offered by a defendant at trial. *Lockett*, 438 U.S. at 604. This mandate requires the consideration of nonstatutory mitigating evidence in order to safeguard individualized decisions that are essential in capital cases and that give due respect to the uniqueness of the individual defendant. *Id.* at 605. Moreover, "[j]ust as the State may not . . . preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Eddings*, 455 U.S. at 113–14. In considering mitigating evidence, however, the sentencer "may determine the weight to be given relevant mitigating evidence." *Id.* at 114–15.

Arizona law in existence at the time of trial required sentencing courts to consider all mitigating evidence, even if it did not establish a statutory mitigating factor. *State v. McMurtrey*, 664 P.2d 637, 646 (Ariz. 1983) (en banc). In addition, the Arizona Supreme Court specifically directed sentencing courts to consider each mitigating circumstance, whether or not enumerated by statute, both individually and cumulatively. *State v. Gallegos*, 870 P.2d 1097, 1118–19 (Ariz. 1994). Also at the time, the Arizona Supreme Court would conduct a de novo review of the trial court's rulings concerning aggravation and mitigation to decide, independently, whether the death sentence should stand. *Brewer*, 826 P.2d at 790–91.

Had counsel presented a claim to the Arizona Supreme Court that the trial court failed to consider the cumulative weight of the mitigating evidence presented, we see no probability that Hurles would have prevailed. At sentencing, the trial court stated on the record that it had considered nonstatutory mitigating circumstances, "including any aspect of [Hurles's] character, propensities or record" that might call for leniency. The court also noted that it had considered Hurles's sentencing memorandum, the testimony presented both at trial and the sentencing hearing and the arguments of counsel. In addition to Hurles's deprived upbringing and good behavior while incarcerated, the trial court noted it had considered Hurles's low intelligence, lack of education and inadequate mental health treatment while incarcerated.

While the mitigating evidence may have moved us to mercy had we presided over Hurles's sentencing trial, such a determination is not appropriate on habeas review. *Richter*, 131 S.Ct. at 786 (holding a reviewing court must not treat the unreasonableness question as a test of its confidence in the

result it would reach under de novo review). Instead, we must ask whether reason supports the state court's conclusion that counsel rendered effective assistance to Hurles, despite not raising this claim on appeal. We find no error in that determination. The record makes plain that the trial court did in fact consider the mitigating evidence offered, as the Constitution requires. *Parker v. Dugger*, 498 U.S. 308, 314 (1991) ("We must assume the trial judge considered all this evidence before passing sentence. For one thing, he said he did."). The Arizona Supreme Court's independent review of the death sentence imposed here also persuades us that Hurles did not suffer an error requiring federal habeas intervention. *Hurles*, 914 P.2d at 1299–1300. While AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings . . . [i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court decision conflicts with [the Supreme Court's] precedents." *Richter*, 131 S.Ct. at 786. Such a conflict does not exist here. The state court did not err in denying this claim.

## B. Judicial Bias

Hurles contends that Judge Hilliard's failure to recuse herself from his trial, sentencing and post-conviction proceedings denied him due process of law. The state court came to an unreasonable determination of the facts in denying this claim. Accordingly, we remand for an evidentiary hearing.

The Supreme Court held long ago that a "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "Fairness of course

requires an absence of actual bias in the trial of cases.  But our system of law has always endeavored to prevent even the probability of unfairness." *Id.*; *cf. Mistretta v. United States*, 488 U.S. 361, 407 (1989) ("The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship.").  This most basic tenet of our judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated fairly by a neutral and detached arbiter.

"The Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard," for a judicial bias claim.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  While most claims of judicial bias are resolved "by common law, statute, or the professional standards of the bench and bar," the "floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* at 904–05 (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).  The Constitution requires recusal where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow*, 421 U.S. at 47.  Our inquiry is objective. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009).[1]  We do not ask whether Judge Hilliard actually harbored subjective bias. *Id.*  Rather, we ask whether

---

[1] We cite to *Caperton*, the Supreme Court's recent decision regarding judicial bias, throughout this opinion.  *Caperton* is not controlling insofar as it announces new clearly established Supreme Court precedent that post-dates the state court decision at issue here, although we do not read *Caperton* to announce a new rule of law that affects our analysis.  We refer to *Caperton*, however, where we find its analysis of previously established Supreme Court jurisprudence helpful to our resolution of this matter.

the average judge in her position was likely to be neutral or whether there existed an unconstitutional potential for bias. *Id.* "Every procedure which would offer a possible temptation to the average . . . judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the [accused] due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532 (1927).

Hurles need not prove actual bias to establish a due process violation, just an intolerable risk of bias. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986); *see also Caperton*, 556 U.S. at 883 ("[T]he Due Process Clause has been implemented by objective standards that do not require proof of actual bias.") (citing *Lavoie*, 475 U.S. at 825; *Mayberry v. Pennsylvania*, 400 U.S. at 455, 465–66 (1971); *Tumey*, 273 U.S. at 532). Thus, we must ask "whether 'under a realistic appraisal of psychological tendencies and human weakness,' the [judge's] interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Caperton*, 556 U.S. at 883–84 (quoting *Withrow*, 421 U.S. at 47). Due process thus mandates a "stringent rule" that may sometimes require recusal of judges "who have no actual bias and who would do their very best to weigh the scales of justice equally" if there exists a "probability of unfairness." *Murchison*, 349 U.S. at 136. But this risk of unfairness has no mechanical or static definition. It "cannot be defined with precision" because "[c]ircumstances and relationships must be considered." *Id.*

For instance, due process requires recusal where the judge has a direct, personal and substantial pecuniary interest in convicting a defendant. *Tumey*, 273 U.S. at 523, 532. Other

financial interests also may mandate recusal, even if less direct. *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973); *see also Ward v. Monroeville*, 409 U.S. 57 (1972) (requiring recusal where village mayor with revenue production role also sat as a judge and imposed revenue-producing fines on the defendant); *Lavoie*, 475 U.S. at 824–25 (requiring recusal where (1) a justice of the state supreme court cast the deciding vote and authored an opinion upholding punitive damages in certain insurances cases and (2) that same justice was a plaintiff in a pending action involving the same legal issues from which he obtained a large monetary settlement). Non-pecuniary conflicts "that tempt adjudicators to disregard neutrality" also offend due process. *Caperton*, 556 U.S. at 878. A judge must withdraw where she acts as part of the accusatory process, *Murchison*, 349 U.S. at 137, "becomes embroiled in a running, bitter controversy" with one of the litigants, *Mayberry*, 400 U.S. at 465, or becomes "so enmeshed in matters involving [a litigant] as to make it appropriate for another judge to sit," *Johnson v. Mississippi*, 403 U.S. 212, 215–16 (1971).

We now turn our attention to the matter at hand. Having catalogued the Supreme Court's clearly established judicial bias jurisprudence and being mindful of the limitations AEDPA places on us, we must determine whether the state court erred in denying Hurles's judicial bias claim. We focus our inquiry on Judge Hilliard's denial of Hurles's second PCR, as that five-page minute order is the last reasoned decision by the state court on the judicial bias claim. *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).

Ordinarily, we cloak the state court's factual findings in a presumption of correctness. 28 U.S.C. § 2254(e)(1). However, we afford such deference only if the state court's fact-finding process survives our intrinsic review pursuant to AEDPA's "unreasonable determination" clause. *See Taylor*, 366 F.3d at 1000. Here, the state court's fundamentally flawed fact-finding process, to the extent it constitutes a process, fails our intrinsic review.

In his second PCR, Hurles alleged judicial bias. He argued that Judge Hilliard responded to his special action petition, received contemporaneous copies of each pleading filed in her name, knew the pleadings were framed in terms of her personal opposition to his request for relief, did not object to the tone or content of the pleadings and repeatedly denigrated defense counsel. Second PCR at 1-3–1-5. Judge Hilliard then presided over his trial and sentencing, sentenced him to death, presided over and denied his first PCR and presided over his second PCR. Second PCR at 1-2. Judge Hilliard denied Hurles's judicial bias claim.

Judge Hilliard did not hold an evidentiary hearing or provide another mechanism for Hurles to develop evidence in support of his claim, despite her conclusion that Hurles "offer[ed] no factual evidence to support his allegations." Minute Entry, Aug. 9, 2002, at 2, *Hurles v. Schriro*, No. CIV-00-0118-PHX-RCB (D. Ariz. 2008), ECF 72-1 at 19 ("Minute Entry"). Even worse, she found facts based on her untested memory of the events, putting material issues of fact in dispute. Judge Hilliard concluded that she did not specifically authorize a pleading to be filed on her behalf, did not provide any input on the responsive brief, that she was a nominal party only and that she did not have any contact with the Arizona Attorney General's Office. In effect, she offered

testimony in the form of her order denying Hurles's second PCR. Minute Entry at 2. Hurles had no opportunity to contest Judge Hilliard's version of events that took place years before. Instead, Judge Hilliard accepted her factual assertions as true and relied on them to conclude that "a reasonable and objective person would not find partiality." *See* Minute Entry, Aug. 9, 2002, at 2, *Hurles v. Schriro*, No. CIV-00-0118-PHX-RCB (D. Ariz. 2008), ECF 72-1 at 19 ("Minute Entry").

Judge Hilliard's denial of Hurles's judicial bias claim rests on an unreasonable determination of the facts. We have held repeatedly that where a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, "the fact-finding process itself is deficient" and not entitled to deference. *Taylor*, 366 F.3d at 1001 ("If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an unreasonable determination of the facts.") (internal quotation marks omitted); *see also Perez v. Rosario*, 459 F.3d 943, 950 (9th Cir. 2006) (amended) ("In many circumstances, a state court's determination of the facts without an evidentiary hearing creates a presumption of unreasonableness.") (citing *Taylor*, 366 F.3d at 1000); *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) ("But with the state court having refused [the petitioner] an evidentiary hearing, we need not of course defer to the state court's factual findings—if that is indeed how those stated findings should be characterized—when they were made without such a hearing."); *cf. Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("Having refused [petitioner] an evidentiary hearing on the matter, the state cannot argue now that the normal AEDPA deference is owed the factual determinations

of the [state] courts."); *Weaver v. Thompson*, 197 F.3d 359, 363 (9th Cir. 1999) (according no deference where written statements by trial judge to defense counsel "were not subject to any of the usual judicial procedures designed to ensure accuracy").

This case presents an especially troubling example of defective fact-finding because the facts Judge Hilliard "found" involved her own conduct, and she based those "findings" on her untested memory and understanding of the events. *See Buffalo v. Sunn*, 854 F.2d 1158, 1165 (9th Cir. 1988) (finding error when the court relied on "personal knowledge" to resolve disputed issue of fact); *cf. Murchison*, 349 U.S. at 138 ("Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination.").

We cannot conclude, nor could any appellate panel, that the record supports Judge Hilliard's factual findings. *Id.* at 1000. Any appellate court to whom this defect was pointed out would be unreasonable in holding that Judge Hilliard's fact-finding process was adequate. *Id.* Based on the flaws in the state court's fact-finding process, we conclude the state court decision resulted in an "unreasonable determination of the facts" and is not entitled to a presumption of correctness. *See id.* at 999 (holding unreasonable determination clause applies where "the process employed by the state court is defective").

Where a habeas petitioner has not failed to develop the factual basis of his claim in state court as required by

28 U.S.C. § 2254(e)(2), an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to *Townsend v. Sain*, 372 U.S. 293, 313 (1963), and (2) the allegations, if true, would entitle him to relief. *Stanley*, 598 F.3d at 624. A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim. *Id.* (citing 28 U.S.C. § 2254(e)(2)); Second PCR at 1-7, 1-15 (seeking right to litigate judicial bias claim before a trial judge other than Judge Hilliard). Under *Townsend*, a federal court must grant an evidentiary hearing in circumstances present here: (1) the state courts factual determinations are not fairly supported by the record as a whole, and (2) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing. *Townsend*, 372 U.S. at 313. Therefore, Hurles is entitled to an evidentiary hearing if his allegations, if proved, would entitle him to relief. *Stanley*, 498 F.3d at 624. They would.

In determining whether Hurles enjoyed "a fair trial in a fair tribunal," *Bracy*, 520 U.S. at 904, we must consider whether the probability that Judge Hilliard harbored actual basis against Hurles is too high to be constitutionally tolerable, *Withrow*, 421 U.S. at 47. We must ask whether the average judge, in Judge Hilliard's position, was likely to sit as a neutral, unbiased arbiter or whether there existed an unconstitutional risk of bias. *Caperton*, 556 U.S. at 881. But to consider fairly the potential for bias, we must consider the average reasonable judge in the particular circumstances in which Judge Hilliard found herself. *Murchison*, 349 U.S. at 136 (noting that the probability of unfairness "cannot be defined with precision. Circumstances and relationships must be considered."). While Hurles does not face the daunting task of proving actual bias in order to establish a due process

violation, *Lavoie*, 475 U.S. at 825, as the risk of actual bias or prejudgment goes up, so, too, does the strength of his judicial bias claim, *see Caperton*, 556 U.S. at 883–84. Thus, a likelihood of unfairness would require recusal even if Judge Hilliard did not actually harbor bias against Hurles. *Murchison*, 349 U.S. at 136.

The tenor of Judge Hilliard's responsive pleading in the special action proceeding, by itself, suggest strongly that the average judge in her position could not later preside over Hurles's guilt phase, penalty trial and post-conviction proceedings while holding "the balance nice, clear and true" between the state and Hurles. *Tumey*, 273 U.S. at 532. But proof that Judge Hilliard participated in the special action proceedings as more than a nominal party, had contact with French, commissioned or authorized the responsive pleading or provided any input on the brief, would help establish that Judge Hilliard became "so enmeshed in matters involving [Hurles] as to make it appropriate for another judge to sit," *Johnson*, 403 U.S. at 215–16, or that Judge Hilliard became "embroiled in a running, bitter controversy" with Hurles and his counsel, *Mayberry*, 400 U.S. at 465. *See Murchison*, 349 U.S. at 137; *Johnson*, 403 U.S. at 215. Such evidence certainly would show an unconstitutional risk of actual bias.

Because Hurles's allegation of judicial bias would, if proved, entitle him to federal habeas relief, the district court abused its discretion in denying this claim without an evidentiary hearing. *Stanley*, 598 F.3d at 626.

## IV.   CONCLUSION

For the foregoing reasons, we remand for an evidentiary hearing on Hurles's claim of judicial bias, remand for

consideration of appellate counsel's failure to raise Hurles's *Ake* claim and otherwise affirm the district court.

**AFFIRMED in part; REVERSED in part; REMANDED.**

IKUTA, Circuit Judge, dissenting:

Today the majority offers a new way to evade AEDPA deference: make an unsupported—and unsupportable—assertion that the state court's fact finding process is "unreasonable" for purposes of § 2254(d)(2).[1]

---

[1] A reasonable person may wonder why the majority has reissued this opinion for the third time, almost four years after the case was submitted on October 7, 2010, particularly when doing so will vacate a prior version of the opinion which has been the subject of a cert petition pending before the Supreme Court for nearly a year.

A brief history is in order. After the case was submitted in 2010, the majority issued its first opinion on July 7, 2011. 650 F.3d 1301 (9th Cir. 2011) (withdrawn). After Arizona filed a petition for rehearing, and the majority ordered a response, the majority withdrew its opinion and reissued a revised opinion on January 18, 2013. 706 F.3d 1021 (9th Cir. 2013) (withdrawn). An accompanying order stated that Arizona's petition for rehearing and rehearing en banc was moot. *Id.* at 1027.

On February 1, 2013, Arizona filed a motion asking the court to rule on its petition for rehearing en banc which had been pending for more than 17 months. Arizona argued that its petition for rehearing was not moot, because the second version of the opinion made the same mistake as the first version: both opinions sidestepped AEDPA deference by holding that the state trial court made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2).

In this case, the state judge resolved a recusal motion based on the judge's own understanding of whether her impartiality might be questioned. Nothing about that is unusual: federal courts, including this one, uniformly adopt this approach. *See, e.g.*, *Suever v. Connell*, 681 F.3d 1064, 1065 (9th Cir. 2012); *see also Miles v. Ryan*, 697 F.3d 1090, 1090 (9th Cir. 2012). Yet the majority notes that the state judge did not hold an evidentiary hearing on the petitioner's claim that recusal was appropriate, and concludes that "[a]ny appellate court to whom this defect was pointed out would be unreasonable in holding that [the state judge's] fact-finding process was adequate." Maj. op at 37.

---

While Arizona's motion was pending before the panel, Hurles filed a motion to remand his ineffective assistance of counsel claims pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Although Hurles's motion came a year after *Martinez* was decided, and was clearly waived (as well as being meritless, as explained below), the panel stayed the mandate on March 19, 2013, pending a decision by our en banc panel in *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013). When this opinion was issued in September 3, 2013, it did not shed any light on Hurles's *Martinez* motion. But the panel further deferred its ruling on Hurles's *Martinez* motion pending the mandate of this court's decision in *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), which was finally issued in April 2014.

In fact, the majority failed to address Arizona's February 2013 motion for a ruling on its original petition for rehearing until today. Concerned that its petition for certiorari would become time barred under U.S. Supreme Court Rule 13(2), Arizona filed a protective petition for certiorari on June 17, 2013. The Supreme Court first distributed this cert petition for the conference of September 30, 2013, and has relisted it for every subsequent conference.

In this third opinion, the majority persists in making the same error that Arizona targeted in its original petition for review, and by vacating its second opinion, has further delayed the Supreme Court's consideration of this error.

Of course this conclusion is wrong. Worse, this conclusion is likely to work mischief by casting doubt on whether state and federal judges can ever appropriately make recusal decisions without first holding evidentiary hearings. Making this conclusion even more absurd, the absence of an evidentiary hearing in this case is entirely irrelevant, because even if all the petitioner's allegations were true, his due process rights were not violated.

And not only does the majority make the district court hold a meaningless evidentiary hearing, but the majority also requires it to engage in another futile exercise of considering whether the procedural default of the claim that Hurles's appellate counsel was ineffective for failing to raise a meritless claim under *Ake v. Oklahoma*, 470 U.S. 68 (1985) should be excused under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Because even the most superficial review of this defaulted claim demonstrates that it is facially meritless, the majority violates our case law and wastes judicial resources by remanding it for further review.

Because this opinion misreads the law, distorts the record, and casts off AEDPA deference on the basis of a non-existent fact-finding flaw, I dissent.

I

A

The facts of Hurles's crime form the backdrop for the dispute over whether Hurles needed a second attorney, which is at the heart of his habeas claim. The Arizona Supreme Court provided the following description:

On the afternoon of November 12, 1992, Hurles went to the Buckeye public library, a small, house-type building in a residential neighborhood. The only employee in the library at the time was Kay Blanton. The last patron, other than Hurles, left the library just before 2:40 p.m. Hurles then locked the front doors to the library and attacked Blanton in the back room. He stripped off her underwear and pulled her skirt above her waist in an unsuccessful attempt to rape her. Using a paring knife found in the back room of the library, Hurles mortally wounded Blanton, stabbing her thirty-seven times and inflicting blunt force trauma by kicking her to such an extent he tore her liver. . . .

[Hurles then fled the scene.]

Between 3:00 and 4:00 p.m., Hurles rode [a borrowed] bicycle to the home of his nephew, Thomas, in Buckeye and asked Thomas for a ride to Phoenix. Hurles had changed his clothes and cleaned himself up somewhat, and Thomas, who had been asleep and was unaware of Blanton's murder, agreed to drive Hurles to Phoenix. As the two left the house, Hurles was carrying a bundle of clothes. During the drive to Phoenix, Thomas noticed that Hurles had bite marks on his wrist. When asked about them, Hurles told Thomas he had been in a fight with a Spanish man at the library, that he had stabbed the man with the man's knife, and that he had

received the bite marks in the fight.  As part of his insanity defense, however, Hurles later claimed he had no recollection of anything that occurred between sitting in the library and going out the back door.

As they continued toward Phoenix, Hurles had Thomas pull over so he could toss the bundle of clothes out the car window. Thomas left Hurles at a Phoenix bus station, where he purchased a bus ticket to Las Vegas. Thomas returned to Buckeye, where he ultimately made contact with the police and told them of Hurles' destination.  Later that evening, the police intercepted Hurles' bus on the way to Las Vegas; Hurles was removed from the bus, arrested, and returned to Phoenix.

With Thomas' help, the police recovered Hurles' discarded clothes.  Police found blood on the clothing that matched Blanton's blood type, which occurs in one percent of the population. Police also found blood matching Blanton's type on Hurles' shoes, which he was still wearing when taken from the bus. Four bloody shoeprints at the murder scene matched the soles of Hurles' shoes, and Hurles' palm print was found on the paring knife left at the scene. . . .

. . . Blanton would have suffered great terror as she was stabbed repeatedly by Hurles.  She also must have suffered great

pain. In addition to the fifteen defensive stab wounds on her hands, Blanton was stabbed eight times in the head, twelve times in the torso, and twice in her lower extremities. She also suffered blunt trauma consistent with kicking, which tore her liver.

The barrage of violence inflicted on Blanton, the fact that she was conscious throughout the attack, and her struggle to fight off her attacker all indicate she suffered terribly and far above the norm of even first-degree murder, leaving no room to doubt that this murder was especially cruel.

*State v. Hurles*, 914 P.2d 1291, 1293–94, 1299 (Ariz. 1996).

B

After Hurles was indicted for this murder, Maricopa County appointed private defense counsel to represent him. Hurles made an ex parte motion for the appointment of a second counsel to aid in his defense. His argument was summary, comprising only four and a half pages. In identifying why he required the appointment of additional counsel, he made only three brief points: (1) "[i]t is apparent that this case will involve numerous civilian and law enforcement witnesses"; (2) "the State will utilize the services of forensic experts on the issues of identification and sexual assault"; and (3) "[p]reparation for the possible penalty phase will [be] in itself a time consuming, complex process." To support his arguments on the third point, Hurles cited to California law, and its presumption that a second attorney is required in a death penalty case. As later noted by

the Arizona Court of Appeals, Hurles's motion for a second attorney was bare bones, and failed to make "a particularized showing on the need for second counsel." *Hurles v. Superior Court* (*Hurles I*), 849 P.2d 1, 4 (Ariz. Ct. App. 1993). The motion made no mention of possible defenses, did not discuss the size of the defense's witness pool for either the guilt or penalty phase, and did not specify any additional forensic or other technical information the defense would present on its own account. In short, it provided no substantial factual basis upon which the trial court could have concluded that a second attorney was necessary for Hurles to obtain adequate representation. Instead, the motion simply asserted that failure to appoint second counsel would potentially violate Hurles's constitutional rights because "[d]efense counsel needs such co-counsel assistance due to the nature of the case in order to effectively advise the defendant and ensure the defendant's right to the effective assistance of counsel."

After the state trial court (Judge Hilliard) denied the request, Hurles filed a petition for special action in the Arizona Court of Appeals,[2] raising the same arguments he presented in his motion. Per Arizona's rules for special actions, Hurles named the trial judge, Judge Hilliard, as a nominal respondent, and the State of Arizona, represented by the office of the Maricopa County Attorney, as the real party in interest. *See Hurles I*, 849 P.2d at 2. In response, the Arizona Attorney General filed a brief in Judge Hilliard's name, in which the Attorney General explained that the presiding criminal judge of the Maricopa County Superior

---

[2] Under Arizona law, the denial of a motion for appointment of a second attorney is not immediately appealable, and so a petitioner seeks review of such a ruling by filing a petition for special action in the Arizona Court of Appeals. *See Hurles I*, 849 P.2d at 1 n.1.

Court (not Judge Hilliard) had requested a responsive pleading in the special action. *Id.* at 2 n.2. Then-current Arizona precedent held that a judge had the right to appear in special action proceedings, even though the judge was merely a nominal party. *Fenton v. Howard*, 575 P.2d 318, 320 (Ariz. 1978). The state Attorney General responded on Judge Hilliard's behalf because Maricopa County, which was prosecuting Hurles, could not take a position on the selection of his counsel in the special action proceeding. *Hurles I*, 849 P.2d at 2.

The responsive brief explained the basis for Judge Hilliard's determination that Hurles's case was straightforward enough to be handled by one attorney. The brief reviewed the aspects of the case that were relevant to making this determination. Rather than describing the facts of the underlying sexual assault and murder, the brief stated only that the State had charged Hurles "with the brutal murder of a librarian in Buckeye, Arizona in November, 1992," and listed the three charges in the indictment. It stated that Hurles's counsel had not yet noticed any defenses, disclosed the names of witnesses, or requested a competency examination. It then described the State's case against Hurles: "An examination of the State's evidence illustrates that its case against Petitioner is very simple and straightforward, compared to other capital cases, contrary to Petitioner's assertions." The brief noted that Maricopa County planned to call relatively few witnesses, namely ten law enforcement agents, the medical examiner, and several civilians, contrary to Hurles's claim that a second counsel was required due to the high number of witnesses and forensic experts. Further, the brief stated that the county had expressed its intent to present the following physical evidence: Hurles's clothing, which was "stained with blood

of the same PGM type as the victim's," his footprint in the victim's blood at the library, and the "fact that books returned by [Hurles] in the return slot at the library place him at the scene a[t] the time of the murder." Thus, the brief focused on the straightforward nature of the State's case and the facts in evidence; it did not discuss the merits or strength of the State's case or presume that Hurles was guilty of the murder with which he was charged.

Turning to Hurles's legal argument for appointment of a second attorney, the brief asserted that Hurles's reliance on California precedent was misplaced because Arizona had adopted different rules and procedures. Specifically, according to the brief, while California law presumed the necessity of a second attorney in capital cases, Arizona had no such presumption. Further, in refuting Hurles's claim that the need to prepare simultaneously for the guilt and penalty phases mandated the appointment of a second attorney, the brief noted that while California required sentencing to begin within 20 days of the verdict, Arizona gave a capital defendant 90 days after the verdict to prepare for sentencing, as well as the option to seek an extension of that time for good cause. These procedural differences made concurrent preparation for both phases far less urgent in Arizona than in its sister state.

In response to Hurles's argument that appointment of a second attorney was necessary to "ensure the defendant's right to the effective assistance of counsel," the brief stated that "if Appointed Counsel believes, because of her caseload, personal competence, or otherwise, that she is incapable of rendering 'competent representation' of the Petitioner, she is ethically bound to withdraw from this case," and asserted that there were other attorneys who provided contract services for

Maricopa County who would be able to provide competent representation.

## C

Before addressing the merits of the special action petition, the Arizona Court of Appeals determined that the case raised "a significant threshold question of standing" that gave the court the chance to refine its jurisprudence on "whether—or under what circumstances—the trial court may properly respond" to a petition for special action. *Hurles I*, 849 P.2d at 1–2. After noting that the real party in interest in the special action proceeding was the State of Arizona, the court stated that "the record does not indicate whether Judge Hilliard, the nominal respondent, actually authorized such a pleading to be filed." *Id.* at 2 n.2. Further, the court stated that from the Attorney General's statement at oral argument, "the pleading was requested by the presiding criminal judge, not by Judge Hilliard, and there was no contact between Judge Hilliard and the Attorney General's office as the pleading was prepared." *Id.*

Turning to the standing issue, the Arizona Court of Appeals acknowledged that in *Fenton v. Howard*, 575 P.2d 318 (Ariz. 1978), the Arizona Supreme Court had held that "a judge does have the right to appear and to be represented in a special action against him, where the judge is a named respondent," 575 P.2d at 320, and that a later appellate decision, *State ex rel. Dean v. City Court of Tucson*, 598 P.2d 1008, 1009 (Ariz. Ct. App. 1979), had interpreted *Fenton* as establishing "a trial judge's unequivocal right to respond to a special action, whatever the nature of the decision the judge seeks to defend." *Hurles I*, 849 P.2d at 3. Notwithstanding this precedent, after examining cases suggesting a narrower

reading of *Fenton*, *see, e.g.*, *Dunn v. Superior Court*, 722 P.2d 1164, 1166–67 (Ariz. Ct. App. 1989), the Arizona Court of Appeals held that a judge designated as the nominal respondent in a special action proceeding may file a brief for the purpose of defending an administrative policy or practice, but "that it is improper for a judge to respond merely to advocate the correctness of an individual ruling in a single case." *Hurles I*, 849 P.2d at 3. Applying its new standing rule to the case before it, the court noted that because "the pleading merely argues that the respondent judge ruled properly on the evidence before her. . . . the trial judge lacked standing" to file a brief in the special action. *Id.* at 4.

Turning its attention to the merits of the special action petition, the Arizona Court of Appeals upheld Judge Hilliard's ruling. Because Hurles's counsel had failed to make "a particularized showing" of the need for a second lawyer and did not "submit evidence to the trial court regarding customary practice in defense of capital cases," the court found "no matter that warrants special action intervention at this time." *Id.*

The case proceeded to trial. Hurles did not raise a judicial bias concern before or after the trial in which the jurors unanimously found him guilty of premeditated and felony murder. Nor did he raise such a concern at sentencing, where under then-current Arizona rules, the trial judge acted alone in imposing the death penalty. Nor did Hurles's direct appeal or first petition for post-conviction relief raise a judicial bias claim.[3]

---

[3] Per Arizona Rule of Criminal Procedure 32.4(e), Hurles's first petition for post-conviction relief was assigned to Judge Hilliard. The trial court denied the petition, and the Arizona Supreme Court affirmed. *Arizona v.*

D

In January 2000, Hurles filed his first federal habeas petition in district court and filed an amended petition a few months later. The district court determined that Hurles had failed to present two of his claims to state court, and so Hurles returned to the state court to exhaust these claims. In January 2001, Hurles filed a motion in the state court proceedings to recuse Judge Hilliard from further involvement in his case because he intended to file a second petition for post-conviction relief that would raise an appearance-of-bias due process claim based on the special action proceeding. Hurles's recusal motion was referred to a different state trial judge, Judge Ballinger, who ruled that there was no basis to transfer Hurles's case to another judge.[4]

In March 2001, Hurles submitted his second petition for post-conviction relief, which was assigned to Judge Hilliard pursuant to Arizona Rule of Criminal Procedure 32.4(e) and Judge Ballinger's determination. Judge Hilliard noted the applicable objective test under Arizona law for recusal, specifically, "whether a reasonable and objective person knowing all the facts would harbor doubts concerning the judge's impartiality." In describing the facts of the special action, Judge Hilliard stated that the Attorney General had no specific authorization to file a pleading on her behalf in the

---

*Hurles*, No. CR-99-0422-PC, Order Denying Petition for Review (Ariz. Jan 7, 2000).

[4] Judge Ballinger construed Hurles's motion as a motion for change of judge for cause, which, under Arizona Rule of Criminal Procedure 10.1(a), entitles a defendant "to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge."

special action, and that she (Judge Hilliard) had made no contact with the Attorney General's office. She further noted that Hurles had not pointed to any aspects of the trial or the first petition for post-conviction relief that indicated bias. After ruling that the facts did not require her recusal as a matter of state law and did not amount to a due process violation, Judge Hilliard rejected Hurles's bias claim in August 2002. The Arizona Supreme Court affirmed without opinion.

While this state court proceeding was ongoing, Hurles's federal habeas proceedings were also moving forward slowly. In September 2008, the district court denied Hurles's amended federal petition on the merits. Hurles timely appealed.

## II

The correct application of AEDPA to this case is straightforward. The state court determined that Judge Hilliard's role in Hurles's proceedings did not deprive him of his due process rights. We are tasked with determining whether that determination was contrary to Supreme Court precedent for purposes of § 2254(d)(1).[5] A state court decision is "contrary to" clearly established Supreme Court precedent only if "the state court applies a rule that

---

[5] The state trial court's decision is the last reasoned decision on this claim, and therefore the one that we must consider under AEDPA review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). Because the court did not expressly apply the Supreme Court's decisions considering when a probability of judicial bias rises to a constitutional level, only the "contrary to" prong of § 2254(d)(1) is at issue here. *See Williams v. Taylor*, 529 U.S. 362, 405–07 (2000) (describing the situations in which the "contrary to" prong will apply).

contradicts the governing law set forth in Supreme Court cases *or* if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). For AEDPA purposes, a point of law is not "clearly established" if a state court can draw a "principled distinction" between the case before it and the Supreme Court precedent establishing that rule of law. *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010) (en banc).

A

Here, a state court could certainly draw a principled distinction between the situation in this case and those in the Supreme Court precedents cited by Hurles, and it is actually quite a stretch to hold these precedents applicable at all. The Due Process Clause requires recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). This standard is objective; judges must recuse themselves in circumstances that "would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused." *In re Murchison*, 349 U.S. 133, 136 (1955) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)). Judges are presumed to adjudicate with "honesty and integrity," *Withrow*, 421 U.S. at 47, however, and the situations in which this presumption is overcome are rare: "[M]ost matters relating to judicial disqualification do not rise to a constitutional level," *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948)) (internal alteration omitted), and it is

only in "rare instances" that the Constitution requires recusal. *See Caperton*, 556 U.S. at 890.

"Supreme Court precedent reveals only three circumstances in which an appearance of bias—as opposed to evidence of actual bias—necessitates recusal." *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007). The first arises where a judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [one of the litigants]," *id.* (quoting *Tumey*, 273 U.S. at 523) (internal quotation marks omitted), or where a financial connection to a litigant (such as a massive campaign donation from one party to the judge) creates a constitutionally intolerable risk of bias, *Caperton*, 556 U.S. at 884. The second occurs when a judge "becomes embroiled in a running, bitter controversy" with one of the litigants. *Id.* (quoting *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971)) (internal quotation marks omitted). Finally, due process might require recusal when a judge "acts as 'part of the accusatory process.'" *Crater*, 491 F.3d at 1131 (quoting *In re Murchison*, 349 U.S. at 137).

Other than those cases in which judges have financial interests, which are not relevant here, the Supreme Court cases requiring recusal based on an appearance of bias arise in the context of criminal contempt proceedings. *Caperton*, 556 U.S. at 880 (discussing precedent). In *Murchison*, for example, the Court held unconstitutional a Michigan practice in which judges would order witnesses to appear before them, hold them in contempt, and then preside over their contempt trials. 349 U.S. at 134. The Court held it unconstitutional for a judge to preside over a trial in this situation; it amounted to a "judge-grand jury," which inappropriately involved the judge in the "accusatory process." *Id.* at 137. In *Johnson v.*

*Mississippi*, 403 U.S. 212 (1971) (per curiam), the Court held it unconstitutional for a judge to preside over an individual's contempt trial, where the individual had been held in contempt two days after successfully enjoining the judge from systematically excluding blacks and women from juries. *Id*. at 214. That same year, in *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971), the Court held that a judge who had been berated continuously by a litigant before finally holding him in contempt could not preside over the contempt trial. *Id.* at 465 ("No one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication."); *see also Taylor v. Hayes*, 418 U.S. 488, 501–02 (1974) (relationship between judge and lawyer was such that Due Process Clause required another judge for lawyer's contempt trial).

The fact that all these cases arise in the context of criminal contempt proceedings is instructive because this highlights the circumstances where "the probability of actual bias . . . is too high to be constitutionally tolerable," *Caperton*, 556 U.S. at 877 (quoting *Withrow*, 421 U.S. at 47). Specifically, the probability of bias reaches constitutional proportions when a judge is in a position to first accuse an individual of wrongdoing and then sit in judgment of whether any wrong was in fact committed.

B

The state court's rejection of Hurles's due process claims was not contrary to these precedents because Hurles's allegations, even if true, do not give rise to any of these circumstances. According to the majority, Hurles makes four allegations that, if true, "would show an unconstitutional risk of actual bias." Maj. op. at 39. These four allegations are that Judge Hilliard: (1) "participated in the special action

proceedings as more than a nominal party"; (2) "had contact with French"; (3) "commissioned or authorized the responsive pleading"; or (4) "provided any input on the brief." *Id*. All four of these assertions are essentially the same; they allege that Judge Hilliard had some (or even significant) responsibility for the contents of the special action brief defending her decision to deny Hurles's motion for a second attorney.

But even accepting these allegations as true, the concerns identified by the Supreme Court do not arise. First, this case does not involve a contempt hearing or any analogous situation; in the special action proceeding, Judge Hilliard neither acted as a prosecutor nor sought to advance the prosecutor's interest, and thus was not part of the "accusatory process." *See Crater*, 491 F.3d at 1131. The special action proceeding was ancillary to any determination of guilt or penalty, and involved an evaluation of the evidence only for the purpose of determining whether a second attorney was necessary. As the Arizona Court of Appeals noted, Judge Hilliard's pleading "merely argues that the respondent judge ruled properly on the evidence before her." *Hurles I*, 849 P.2d at 4. This sort of pleading is fully consistent with impartial adjudication.

Second, the record here does not show that Judge Hilliard was "enmeshed" in matters involving Hurles, or that someone in her position would likely have a personal animus toward him. The contents of Judge Hilliard's brief are unremarkable. As described above, the brief explains the reasons Judge Hilliard denied the motion, namely, that the state's evidence was simple and straightforward, Hurles's counsel had not indicated an intent to put on a more complex defense, and what was "required to prepare for trial in this case is exactly

what is required of defense counsel in any criminal case." The Arizona Court of Appeals agreed with this conclusion.

Indeed, a fair review of the brief provides no support for the majority's assertion that the "tenor of Judge Hilliard's responsive pleading in the special action proceeding, *by itself*, suggest[s] strongly that the average judge in her position could not later preside over Hurles's guilt phase, penalty trial and post-conviction proceedings" in an unbiased fashion. Maj. op. at 39 (emphasis added). While the brief made mildly disparaging remarks regarding Hurles's counsel (suggesting that if the counsel did not feel up to the task of rendering competent representation without court-appointed co-counsel, she should withdraw), the Supreme Court has never held that a judge's sour or ill-tempered remarks alone create an appearance of bias necessitating recusal. *See, e.g.*, *Liteky v. United States*, 510 U.S. 540, 555–56 (1994) ("[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," does not necessitate recusal under 28 U.S.C. § 455(a)); *see also United States v. McTiernan*, 695 F.3d 882, 892 (9th Cir. 2012) (holding that the presiding judge's negative comments toward the defendant, such as stating that the defendant "is clearly willing to lie whenever it suits his purpose" did not warrant recusal); *cf. United States v. Wilkerson*, 208 F.3d 794, 799 (9th Cir. 2000) ("The dissent erroneously conflates a judge's asserted displeasure with 'assuming the role of prosecutor'"). Thus, even if Judge Hilliard had personally penned the special action brief, Hurles did not suffer a due process violation.

In sum, even if we were to review the due process issues in this case de novo, Hurles would be unable to establish a due process violation. From this, it follows *a fortiori* that the state court's conclusion was not "contrary to" clearly established precedent. Thus, the court is not relieved of AEDPA deference under § 2254(d)(1), and the district court's decision should be affirmed.

### III

The majority does not engage in this § 2254(d)(1) analysis. Instead, the majority holds that it is relieved of AEDPA deference under § 2254(d)(2) because the state trial court made an unreasonable determination of the facts. But the majority's claim that the state court's fact-finding process was deficient in some material way is entirely baseless.

### A

In considering a challenge to a state court's finding of fact, AEDPA requires deference to state court decisions unless those decisions are "objectively unreasonable," not just incorrect. *Lambert*, 393 F.3d at 972; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In considering this sort of challenge, "we must more than merely doubt whether the process operated properly." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). "Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Id.*

According to the majority, when Judge Hilliard rejected Hurles's claim (in his second PCR petition) that she was biased due to her participation in the special action

proceeding, Judge Hilliard engaged in objectively unreasonable fact-finding. Maj. op at 35–36. The majority claims that Judge Hilliard's fact-finding process was deficient because: (1) she relied on her own recollections in determining that her role in the special action proceeding did not require her recusal, Maj. op. at 35–36, and (2) she did not hold an evidentiary hearing to give Hurles an opportunity to present evidence. Maj. op. at 35. The majority asserts that any appellate panel would be *unreasonable* in finding Judge Hilliard's fact-finding process adequate. Maj. op. at 37.

B

With all due respect, this reasoning does not pass the straight face test. We cannot hold that Judge Hilliard was objectively unreasonable in ruling on this recusal motion when federal judges, like Arizona judges, routinely rule on motions to recuse themselves. *See* 28 U.S.C. § 455(a); Ariz. Code of Jud. Conduct R. 2.11(A) (2009); *see e.g.*, *Miles*, 697 F.3d at 1090 (Berzon, J. & Tallman, J.) (stating that "each judge may decide for himself or herself whether recusal is appropriate"); *Suever*, 681 F.3d at 1065 (Nelson, J.) (determining that she need not recuse herself from case because of the possibility of class membership). For the same reason, Judge Hilliard was not objectively unreasonable in consulting her own recollections; federal judges regularly determine the relevant facts in making recusal decisions. *See, e.g.*, *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 541 U.S. 913, 929 (2004) (Scalia, J.) (explaining his friendship with then-Vice President Cheney, and deciding not to recuse himself from a case in which Cheney was a nominal party); *Microsoft Corp. v. United States*, 530 U.S. 1301, 1301–02 (2000) (Rehnquist, C.J.) (discussing his son's representation of Microsoft in another matter, but deciding

not to recuse himself because no "well-informed individual would conclude that an appearance of impropriety exists"); *Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011) (Reinhardt, J.) (discussing his relationship with his wife and her involvement in the matter before him in the course of concluding that "[p]roponents' contention that I should recuse myself due to my wife's opinions is based upon an outmoded conception of the relationship between spouses.").

If anything, the fact-finding process Judge Hilliard engaged in was more careful and reasonable than those engaged in by judges of this circuit on a regular basis, because she received a separate opinion from Judge Ballinger, a different state court judge, who independently reviewed the record and concluded that there was no appearance of impropriety requiring recusal. *Cf. Sivak v. Hardison*, 658 F.3d 898, 924–25 (9th Cir. 2011) (rejecting a similar judicial bias claim, and noting with approval that an independent judge determined that recusal was not necessary); *Miles*, 697 F.3d at 1090 (holding that a federal judge may decide her own recusal and rejecting the argument that other federal judges should vote on the issue). In light of Judge Ballinger's review of the record and determination that Judge Hilliard's impartiality could not be reasonably questioned, it seems impossible to conclude that *all* jurists would agree that the state court made an unreasonable determination of the facts.

## C

The majority's second rationale for holding that it is relieved of AEDPA deference, that no reasonable jurist could decide a recusal issue without holding an evidentiary hearing, is completely untenable and lacks any support in circuit or

Supreme Court precedent. Until today, judges routinely decided for themselves whether recusal was appropriate in cases where their impartiality might be questioned. *See, e.g.*, *Suever*, 681 F.3d at 1065. Evidentiary hearings were neither required nor typically employed. *See, e.g.*, *Miles*, 697 F.3d at 1090. Today's opinion, however, raises troubling implications, and casts serious doubt on the permissibility of this longstanding practice.

This case is a particularly bad springboard for imposing a new evidentiary hearing requirement. We do not fault a state court for failing to hold an evidentiary hearing if the petitioner has not identified any evidence material to the constitutional claim. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012) (noting the well-established rule "that no [evidentiary] hearing is required [i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief." (quoting *Landrigan*, 550 U.S. at 474)) (quotation marks omitted, second alteration in original). Rather, unless an alleged factual error "goes to a material factual issue that is central to petitioner's claim," *Taylor*, 366 F.3d at 1001, there is no "unreasonable determination of the facts" to justify relieving a federal court of AEDPA deference under § 2254(d)(2). Here, as previously explained, *supra* Section II, even if an evidentiary hearing proved that Hurles's factual allegations were true, and we deemed Judge Hilliard to be responsible for every word in the special action brief, Hurles did not suffer any violation of his due process rights. Under these circumstances, an evidentiary hearing would have been pointless, and thus the state court was not unreasonable in declining to hold one. *See Hibbler*, 693 F.3d at 1147 ("[a] state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded

that the evidence already adduced was sufficient to resolve the factual question." (citing *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005))).

In short, there was nothing wrong with the state court's fact-finding process. This makes the majority's conclusion that any appellate panel "would be unreasonable in holding that Judge Hilliard's fact-finding process was adequate," Maj. op. at 37, not only wrong, but objectively unreasonable. There is no rational justification for the majority to hold that it is relieved of AEDPA deference under § 2254(d)(2).

D

Finally, even if we were relieved of AEDPA deference, the majority errs in remanding the case to the district court for an evidentiary hearing. As the majority notes, the court must find that Hurles's allegations, if true, would entitle him to relief. *See Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010). But as previously discussed, there is simply nothing in the record, even under de novo review, that suggests an unconstitutional risk of bias. As the Supreme Court recently reminded us, it is not enough for a federal court to identify an unreasonable determination of the facts, there must also be a constitutional violation. *See Wilson v. Corcoran*, 131 S. Ct. 13, 14 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law") (per curiam). Here there was neither, and the remand is erroneous and a waste of judicial resources.

IV

Not content with evading AEDPA review by erroneously invoking § 2254(d)(2), the majority also improperly invokes

*Martinez* to excuse Hurles's procedural default of his ineffective-assistance-of-appellate-counsel claims. Maj. op. at 18–21.

*Martinez* addressed a situation where a habeas petitioner raises a procedurally defaulted claim of ineffective assistance of trial counsel. Under *Martinez*, a federal court can excuse the procedural default (and hear the claim) if: (1) the first place that claim could have been raised was in a state post-conviction relief proceeding (termed an "initial-review collateral proceeding" in *Martinez*); (2) the post-conviction relief counsel's failure to raise that claim constituted ineffective assistance of counsel under *Strickland*; and (3) "the underlying ineffective-assistance-of-trial counsel claim is a substantial one." *Martinez*, 132 S. Ct. at 1318. In order to show ineffective assistance of counsel under the *Strickland* standard, a petitioner must show: (1) that the counsel's performance was deficient, because counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that this deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As the Supreme Court has noted, we review ineffective assistance claims under a "highly deferential" standard, indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The majority here focuses on Hurles's claim that his appellate counsel rendered ineffective assistance by failing to

raise an *Ake* claim to the state court.**[6]** Maj. op. at 19–21. This claim is procedurally defaulted, but Hurles argues that the court should excuse the default because it was caused by ineffective assistance of post-conviction counsel.   But contrary to the majority's conclusion, Hurles did not have cause to excuse this procedural default for a simple reason: There is no colorable claim that Hurles's appellate counsel was ineffective under *Strickland*, and therefore, post-conviction relief counsel could not have been ineffective for failing to bring a meritless ineffective-assistance-of-appellate-counsel claim.

According to Hurles, appellate counsel's error was the failure to argue on appeal that the trial court's denial of Hurles's request for a brain scan violated *Ake v. Oklahoma*, 470 U.S. 68 (1985).  But the failure to raise such an *Ake* claim to the state appellate court could not be ineffective assistance of counsel.  At trial, Hurles presented an insanity defense. Under Arizona's then applicable *M'Naghten* test for insanity, Hurles had to prove by clear and convincing evidence that he "was suffering from such a mental disease or defect as not to know the nature and quality of the act or, if [he] did know,

---

**[6]** Hurles claims ineffective assistance of *appellate* counsel, even though such claims are not cognizable under *Martinez*, which only allowed petitioners to raise procedurally defaulted claims based on ineffective assistance of *trial* counsel.  *See Martinez*, 132 S. Ct. at 1315.  *Martinez* held that the rule barring procedurally defaulted claims "governs in all but the limited circumstances" the Supreme Court had carved out in that opinion, which did not include appellate counsel claims.  *Id.* at 1320. Nevertheless, the Ninth Circuit has ignored this limitation, and expanded *Martinez* to apply to claims of ineffective assistance of *appellate* counsel. *See Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013).  Although this holding is contrary to Supreme Court precedent, it is nevertheless the settled law of this circuit.  Accordingly, a court in our circuit must consider Hurles's claims of ineffective assistance of appellate counsel.

that [he] did not know that what he was doing was wrong."
Ariz. Rev. Stat. § 13–502(A) (1993). The state trial court
provided Hurles with a psychiatric expert to assist in his
insanity defense, as required by *Ake*, and denied only
Hurles's request for a brain scan to confirm the expert's
diagnosis that Hurles had organic brain damage. When the
brain scan was subsequently performed for the sentencing
hearing, it showed only "subtle nonspecific abnormalities . . .
associated with mild processing difficulty" that were
consistent with "attention deficit disorder."[7]

Under these circumstances, it would be reasonable for
appellate counsel to decide not to raise an *Ake* claim. First,
such a claim would be contrary to Ninth Circuit precedent.
"By its own terms, *Ake* 'limited the right it recognized' to the
'provision of *one* competent psychiatrist.'" *Leavitt v. Arave*,
646 F.3d 605, 610 (9th Cir. 2011) (quoting *Ake*, 470 U.S. at
79) (internal alterations omitted). We have explained that
"the defendant lacks the right to appointment of a second
psychiatrist even where the first psychiatrist is alleged to be
incompetent or reaches a diagnosis unfavorable to the
defense." *Id.* (internal quotation marks and citations
omitted). Indeed, we have stated that "*Ake*'s limitation to a
single, independent psychiatrist is critical given that
[p]sychiatry is not . . . an exact science, and psychiatrists
disagree widely and frequently . . . on the appropriate
diagnosis." *Id.* (internal quotation marks omitted); *see also*

---

[7] Indeed, the test results were so unhelpful that Hurles's attorney at
sentencing ignored them for mitigation purposes. Even though the trial
court must consider any relevant mitigating factor, *Eddings v. Oklahoma*,
455 U.S. 104, 112 (1982), sentencing counsel preferred to focus on a
theory that Hurles' brain damage was not the sort that showed up in brain
scans.

*Pawlyk v. Wood*, 248 F.3d 815, 823 (9th Cir. 2001) ("[A] state is required to ensure to a defendant only the provision of one competent psychiatrist" (internal quotation marks omitted)); *Harris v. Vasquez*, 949 F.2d 1497, 1516–18 (9th Cir. 1990) (same).  The majority suggests that appellate counsel could have distinguished these and other cases, Maj. op. at 19–20, but even were this possible, the decision not to raise such a claim falls well within the "exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, given the weight of case law counseling against raising an *Ake* claim when the trial court denied funds for a *second* psychiatric expert.

Further, even if appellate counsel had a colorable legal basis to claim there was an *Ake* error at trial, the record established that any such error was harmless beyond a reasonable doubt.  Appellate counsel would have known that the brain scan prepared for Hurles's sentencing hearing showed only that Hurles' suffered from a "subtle and nonspecific abnormality" consistent with attention deficient disorder.  Such evidence would not have helped Hurles prove by clear and convincing evidence that his mental disease was so severe that he did not "know the nature and quality of the act" or "that what he was doing was wrong."  Ariz. Rev. Stat. § 13–502(A) (1993).  To the contrary, the results of the brain scan would have entirely undercut Hurles's insanity defense, which was based on expert testimony that Hurles experienced a psychotic episode at the time of the crime due to an unspecified brain injury.  *Cf. Vickers*, 144 F.3d at 616 (rejecting an *Ake* claim when an adverse finding would have "seriously undercut" the defense).

In sum, appellate counsel could reasonably decide not to bring a claim of a trial-level *Ake* error because such a claim

would have no support in the law, and any error would have been harmless. Accordingly, the failure to bring such a claim could not be ineffective assistance of appellate counsel under *Strickland.* And because there was no viable ineffective-assistance-of-appellate-counsel claim based on the alleged *Ake* error, post-conviction counsel could not be ineffective for failing to raise it.

As a result, the majority doubly errs in remanding Hurles's defaulted claim that appellate counsel rendered ineffective assistance of counsel. Hurles could excuse the procedural default only if post-conviction counsel was ineffective for failing to raise this claim. But under a proper application of the deferential *Strickland* standard, the ineffective-assistance-of-appellate-counsel claim is meritless, and therefore post-conviction counsel could not be ineffective for failing to raise it. Where "there is little doubt about the correct answer" to the petitioner's defaulted claims, the appellate panel should "decide [the] issue in the first instance rather than remand to the district court." *Detrich v. Ryan*, 740 F.3d 1237, 1248 (9th Cir. 2013) (en banc) (plurality opinion). By failing to apply *Strickland*'s deferential standard correctly (or at all), the majority ignored "the correct answer," *id.*, and accordingly erred in excusing Hurles's default.

V

The Supreme Court has harshly criticized our non-compliance with AEDPA deference.[8] Here the majority

---

[8] *See, e.g.*, *Cavazos v. Smith*, 132 S. Ct. 2, 7 (2011) (per curiam) ("Doubts about whether Smith is in fact guilty are understandable. But it is not the job of this Court, and was not that of the Ninth Circuit, to decide

repeats the same mistake corrected by the Supreme Court in
*Harrington v. Richter*, 131 S. Ct. 770 (2011), now under the
guise of a § 2254(d)(2) analysis instead of § 2254(d)(1)
review. As in *Harrington*, the majority used its de novo
conclusion that Hurles suffered a due process violation as a
springboard for its § 2254(d)(2) ruling. In effect, the majority
holds that the state court's factual determination was
unreasonable because the court failed to acknowledge that its

---

whether the State's theory was correct. The jury decided that question, and
its decision is supported by the record."); *Cullen v. Pinholster*, 131 S. Ct.
1388, 1410–11 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011)
(per curiam) (stating that our decision that the state court's determination
was an unreasonable determination of the facts was "as inexplicable as it
is unexplained"); *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per
curiam); *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *Premo v.
Moore*, 131 S. Ct. 733, 740 (2011); *Rice v. Collins*, 546 U.S. 333, 342
(2006) ("The panel majority's attempt to use a set of debatable inferences
to set aside the conclusion reached by the state court does not satisfy
AEDPA's requirements for granting a writ of habeas corpus."); *Schriro v.
Smith*, 546 U.S. 6, 8 (2005) (per curiam) ("[T]he Court of Appeals
exceeded its limited authority on habeas review . . . ."); *Middleton v.
McNeil*, 541 U.S. 433, 437 (2004) (per curiam) ("[The Ninth Circuit's]
conclusion failed to give appropriate deference to the state court's
decision."); *Yarborough v. Gentry*, 540 U.S. 1, 11 (2003) (per curiam);
*Woodford v. Visciotti*, 537 U.S. 19, 20 (2002) (per curiam) (reversing
Ninth Circuit's grant of habeas relief because it "exceed[ed] the limits
imposed on federal habeas review by 28 U.S.C. § 2254(d)"); *Early v.
Packer*, 537 U.S. 3, 10 (2002) (per curiam) (admonishing the Ninth
Circuit for "repeatedly and erroneously substitut[ing]" the phrase "'*failed
to apply*' clearly established Supreme Court law" for "the more
demanding requirement of § 2254(d)(1): that the decision be '*contrary to*'
clearly established Supreme Court law" (emphases added)); *see generally*
Hon. Diarmuid F. O'Scannlain, *A Decade of Reversal: The Ninth Circuit's
Record in the Supreme Court Through October Term 2010*, 87 Notre
Dame L. Rev. 2165, 2168–76 (2012).

participation in the special action proceeding had violated Hurles's due process rights. *Harrington* corrected a similar error: "The Court of Appeals appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under de novo review," and because the court "had little doubt that [defendant's constitutional] claim had merit, the Court of Appeals concluded the state court must have been unreasonable in rejecting it." *Harrington*, 131 S. Ct. at 786. Equally applicable is *Harrington*'s criticism of the Ninth Circuit for "overlook[ing] arguments that would otherwise justify the state court's result." *Id.* As in *Harrington*, the majority here failed to weigh the evidence in the record that made the state court's fact-finding process and factual conclusions reasonable, relying instead on an unprecedented view that judges must hold evidentiary hearings on recusal motions. Finally, as *Harrington* stated, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The majority clearly lost sight of this rule, because there is no basis for its holding that the state court's fact-finding was either substantively or procedurally unreasonable. And even if Hurles's factual allegations were true, they do not form the basis of a due process claim, making remand for an evidentiary hearing wholly inappropriate. *Turner v. Calderon*, 281 F.3d 851, 890 (9th Cir. 2002).

Our responsibility here is clear: under the strictures of AEDPA and Supreme Court precedent, we are bound to uphold the state court's denial of Hurles's due process claim, which is neither contrary to Supreme Court precedent nor based on an unreasonable determination of the facts. Because the majority's decision invalidates a lawfully imposed capital sentence, further frays the (increasingly threadbare) fabric of

our AEDPA jurisprudence, and lays the groundwork for other frivolous habeas challenges to trial judges' impartiality, I dissent.